## HEALD *v.* BENNETT.

A justice of the peace is not authorized, in the absence of special instructions, to receive any thing except gold and silver coin of the United States, in satisfaction of a judgment rendered before him; and, if he receive bank bills, current as money at the time, from a constable who has collected the same on the execution, and enter satisfaction of the judgment, he will be liable to the judgment creditor for the amount, even though he afterwards tender him the bills received, and they become depreciated or worthless.

Neither has a sheriff or constable power to receive any thing except the legal currency of the United States, on an execution in his hands for collection, and, if he does so, without special instructions, it is at his own risk.

ERROR to Berrien Circuit Court.   Assumpsit for money had and received, brought by Heald against Bennett. The facts proved on the trial before E. RANSOM, Presiding Judge, were as follows:   Heald recovered a judgment against one McGiven for $54.81 damages, and $2.31 costs, before Bennett, who was an acting justice of the peace.   An execution was issued on the judgment, and

subsequently returned to the justice, who made the following entry on his docket: "Rec'd in full. Execution end. satisfied. April 7, 1838." Afterwards, Heald demanded the amount received on the execution from Bennett, who, thereupon, tendered to him bills of the Bank of Lapeer, the Farmers' Bank of Genesee, the St. Joseph County Bank, and the Bank of Michigan, stating that he received them in payment of the judgment. Heald refused to accept the bills tendered. There was also evidence tending to show that the constable to whom the execution was delivered for collection, levied upon, and sold property of McGiven, and took in payment bills of the above mentioned banks, and paid them to Bennett on the return of the execution; and that they were current at the time.

Upon this evidence the Court below charged the jury, in substance, "that a magistrate or constable, in the absence of instructions to the contrary, may receive current bank bills in satisfaction of a judgment; and that, if a justice of the peace, as in the present case, tendered to a party the same funds which were paid to him by the constable, such funds being current at the time they were received, he was not liable to an action for money had and received. But that, if the justice received any kind of property, other than money, he would be liable to the party for the amount of the judgment so paid; and that, if the jury found, in this case, that the defendant had received property other than money, or had received different bank bills from those tendered to the plaintiff, and had satisfied the judgment, he would be liable to the plaintiff; and that their verdict in such case should be for the plaintiff."

To this charge the plaintiff excepted.

The jury found a verdict for the defendant, upon which final judgment was rendered. To reverse which, the

plaintiff removed the cause into this Court by writ of error.

*V. L. Bradford,* for the plaintiff in error.

*C. Dana,* for the defendant in error.

WHIPPLE, J. delivered the opinion of the Court.

The only question presented for our determination is, whether the instruction given to the jury, by the Court below, can be sustained.

The constitution and laws of the United States define what shall constitute a legal tender in payment of debts. By the constitution, Heald had a right to refuse any tender which McGiven might make in payment of the judgment against him, except it was in the gold and silver coin of the United States, made current by law. Was this right to payment in the legal currency, which certainly existed before the judgment was satisfied, impaired or lessened by the circumstance that the constable, by virtue of the execution issued to enforce the judgment, levied upon and sold property of McGiven, and received therefor bank bills? I apprehend not. No form of proceeding which the local laws of the state may prescribe for the collection of debts, can deprive the party of his constitutional right to demand *money* in payment of his debt. Suppose the officer, after the sale of the property on the execution, had retained the proceeds of that sale in his hands, and refused to pay them over to Heald. It would have been clearly competent for the latter to have instituted a suit against him for money had and received ; and any attempt on his part to resist a recovery, by showing a tender in any thing except the current coin of the United States, would have been of no avail. The levy and sale made by him discharged the judgment; and the moneys arising therefrom, were held by him for the use of

Heald.   After the payment over of the proceeds of the sale by the officer to Bennett, the justice, the latter occupied the same relation to Heald, that the officer had done before the payment; and Heald had a right to demand of him gold and silver coin, before discharging him from the debt incurred the moment he entered satisfaction of the judgment on his docket.

,   Both the officer and justice were, in some degree, the special agents of the plaintiff, the judgment creditor, and had no authority to bind him by agreeing to receive payment in any other currency than that recognized by law. In this respect their authority differs essentially from that of a general agent, who may, by the terms of his agency, be authorized to receive depreciated paper, or any other property, in payment of a debt due his principal.   A sheriff, or justice of the peace, may, if he will, receive in payment of an execution, or satisfaction of a judgment, bank bills; but, in doing this, he incurs all the hazard incident to such a proceeding.   There is no hardship in holding public officers, charged with the collection of moneys, to a rigid responsibility.   It is always in their power to protect themselves from that responsibility, by refusing to receive any funds not made a legal tender by law.   If they think proper to depart from the strict line of their duty, and unnecessarily involve themselves in difficulty, it is chargeable to their own folly; but surely the individual to whom the debt is due, ought not to suffer.   If such officer bind his principal, by receiving the bills of a bank, why may he not bind him by receiving the bill of an individual?   In principle there is no distinction, except such as may have grown out of the circumstance, that the community are in the habit of regarding as money, that which is a mere promise to pay money.   When the defendant, in the present case, received the bills of rotten banks, and entered satisfaction of the judgment in his

docket, he became the debtor of the plaintiff, to the amount of that judgment.    That debt he had no right to discharge, in the *promises to pay, of banks;* and the plaintiff might reasonably insist that a debt due him of $54.81, should be paid in that which should be actually worth to him that amount, and not in the promises of the Farmers' Bank of Genesee, and other kindred institutions.

I am, therefore, of opinion, that the Circuit Court erred in its instructions to the jury, and that the judgment below must be reversed, and the cause remanded with instructions to issue a *venire facias de novo.*

*Judgment reversed.*